IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KYLE PAINE | CRIMINAL ACTION<br>NO. 20-0055 |

**PAPPERT, J.** August 19, 2021

## MEMORANDUM

On January 30, 2020, the Government charged Kyle Paine by indictment with: (1) using the Internet to entice a minor, and attempt to entice a minor, to engage in sexual conduct in violation of 18 U.S.C. § 2422(b); (2) transferring and attempting to transfer obscene material to a minor in violation of 18 U.S.C. § 1470; and (3) possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). Several months earlier, local police detectives performed a "knock and talk" at Paine's home. During that interaction, Paine admitted to having an online conversation with someone he believed to be an 11-year-old girl. He also admitted to sending a photograph of his genitals and asking for a photograph in return. He moves to suppress those statements, contending the interview was a custodial interrogation and his statement was involuntary. The Court held a hearing on August 17 and denies the Motion.

I
A
i

Around March 11, 2019, the KIK Messenger account "toystorybro9239" with the display name "Kyle P" sent a message to an undercover FBI agent who had created an online profile purporting to be a 19-year-old female. (Suppr. Hr'g Tr. 33:24–34:8; Gov't

Resp. 2, ECF 41.) The undercover agent informed Kyle P that she was actually an 11-year-old girl and Kyle P proceeded to engage in a sexually explicit conversation with the agent. (Gov't Resp. 2.) During that conversation, Kyle P asked whether the agent had a friend who would be interested in engaging in sexual activity with them. (*Id.*) The agent told Kyle P that she did and Kyle P described sexual acts he wanted to perpetrate against both young girls. (*Id.*) These communications continued for several days and Kyle P eventually sent the agent an image of his genitals and asked for an image of the girls' genitals in return. (*Id.* at 2–3.) Kyle P arranged to meet up with the girls to engage in sexual activity on March 15, 2019 at a shopping center. (*Id.* at 3.) After he didn't show up, he told the agent he overslept, suggested they meet "over the weekend" and promised to "make it up" to her. (*Id.*) Kyle P then ceased communications with the agent. (*Id.*)

An investigation revealed the IP address associated with the Kyle P account was registered to Erika Paine at 83 Windham Drive, Langhorne, PA 19047. (Suppr. Hr'g Tr. 11:20–25, 34:3–5.) The investigation further showed that Kyle Paine lived at 83 Windham Drive. (*Id.* at 12:10–12.)

ii

Around 2:00 p.m. on April 3, 2019, Bensalem Township Police Detectives Gregory Smith and Brian Oliverio knocked on the front door of 83 Windham Drive. (*Id.* at 12:16–20, 14:17.)[1] When Paine answered the door, Smith and Oliverio—who had arrived in an unmarked Ford Fusion and were dressed in police department polo shirts—introduced themselves and asked to speak with Paine. (*Id.* at 13:19, 14:3–4,

---

[1] Detective Smith testified at the suppression hearing and the Court credits his testimony.

19–22.) Each detective had a firearm on his hip. (*Id.* at 17:16–19.) Paine stepped outside and agreed to speak to the detectives on the front porch. (*Id.* at 15:16–24.) The porch is small with a brick wall on one side. (*Id.* at 28:20–29:1.) Smith and Oliverio told Paine they wanted to discuss his conversation with a female on KIK Messenger. (*Id.* at 15:9–11.) Paine acknowledged using the messenger to speak to a female but initially denied knowing the girl's age. (*Id.* at 15:16–22.) Smith told Paine that he had a transcript of the conversation and Paine apologized for lying and admitted to knowing the girl was 11-years-old. (*Id.*) Paine also admitted to sending a photograph of his genitals and asking for a graphic photograph in return. (Gov't Ex. B, Bensalem Township Police Incident Report Form 3.) Smith and Oliverio left without placing Paine under arrest. (Suppr. Hr'g Tr. 20:16–18.)

Smith and Oliverio did not advise Paine of his *Miranda* rights before the interview, which lasted about twenty minutes and took place entirely on Paine's front porch. (*Id.* at 16:17–19.) The detectives, who stood one or two feet from Paine, did not put him in handcuffs or physically restrain him in any way. (*Id.* at 17:9–11, 20:13–15.) They kept their firearms holstered on their hips throughout the encounter. (*Id.* at 17:16–19.) Paine did not tell the detectives that he did not wish to speak with them or try to end the conversation at any point. (*Id.* at 21:12–16.) When the conversation ended, Paine went back inside the house. (*Id.* at 16:20–22.)

Shortly after this interview, law enforcement learned that in December of 2015 when Paine was 22-years-old, he drove to West Virginia in the middle of the night to pick up a 15-year-old girl he met online. (Gov't Resp. 4–5.) The girl's mother reported her missing and law enforcement eventually found her with Paine at 83 Windham

Drive. (*Id.* at 5.) The girl told law enforcement that Paine said she had to take the blame for leaving home so that Paine would not get in trouble. (*Id.*) She also said she told Paine that she wanted to return home during the trip to Pennsylvania but Paine refused to turn around. (*Id.*)

iii

Based on the KIK Messenger communications, Smith and Oliverio's discussion with Paine and law enforcement's understanding of the 2015 incident, Smith sought and obtained a federal search warrant for 83 Windham Drive. *See* (*id.* at 5–6; Gov't Ex. A, ECF 41-1). While executing the search warrant, law enforcement recovered a cell phone with evidence related to the KIK Messenger conversation between Kyle P and the undercover agent, including photographs of male genitalia matching the image the agent received from Kyle P. (Gov't Resp. 6.) Another cell phone contained images of male genitalia matching the images on the first cell phone. (*Id.*) The second cell phone also contained images appearing to be child pornography, so law enforcement obtained a second search warrant to search Paine's electronic devices for child pornography. (*Id.*) While executing the second warrant, they found two images of child pornography on the second cell phone. (*Id.*)

B

Paine contends his admissions that he knew the girl he spoke to on KIK was 11-years-old and that he had sent pictures of his genitals and asked for explicit photographs in return were obtained in violation of his Fifth Amendment rights. *See* (Mot. to Suppr. 3–4). He asserts the interview at his home was a custodial interrogation "designed [ ] to obtain [an incriminating] statement." (*Id.* at 4.)

4

According to Paine, the Court must suppress these statements because neither Smith nor Oliverio advised him of his *Miranda* rights. (*Id.* at 3.) Paine further claims his incriminating statements were involuntary because Smith and Oliverio coerced his statements and performed the "knock and talk" with the intent of eliciting an incriminating statement. *See* (*id.* at 3–4). Lastly, Paine argues the Court must suppress all evidence obtained pursuant to the search warrants as fruit of the poisonous tree because "the affidavit of probable cause relies heavily" on his purportedly coerced statements. (*Id.* at 4.)

The Government contests each of Paine's arguments. First, it contends the "knock and talk" was not custodial so Paine was not entitled to *Miranda* warnings. (Gov't Resp. 7–10.) Next, it disagrees that Paine's statements were involuntary, saying there is no evidence that Paine's "'will was overborne in such a way as to render his confession the product of coercion.'" (*Id.* at 11) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991)). Finally, the Government says the Court need not suppress the evidence obtained via search warrant for three reasons. First, it argues Paine was not entitled to *Miranda* warnings so the Government's use of his statements in the affidavit of probable cause does not taint the physical evidence obtained pursuant to the search warrants. (*Id.* at 12–13.) Second, it contends that even if Paine was entitled to *Miranda* warnings, statements elicited in violation of *Miranda* do not require suppression of physical evidence discovered based on those statements. (*Id.* at 13.) Third, the Government claims the affidavit of probable cause established probable cause for the search even without Paine's incriminating statements, so any error in including it was harmless. (*Id.* at 14.)

5

II

A

The Fifth Amendment's prohibition against compelled self-incrimination requires that *Miranda* warnings precede custodial interrogations. *See Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981). If *Miranda* warnings are not issued a "presumption of compulsion" applies, *Oregon v. Elstad*, 470 U.S. 298, 307 (1985), and "evidence resulting from the questioning must be suppressed." *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005) (citing *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966)). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Law enforcement is not required to give *Miranda* warnings outside of a custodial interrogation. *See United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006).

Custody requires "circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508–09 (2012). To determine whether a person is in custody, "the initial step is to ascertain whether, in light of the objective circumstances of the interrogation . . . a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* at 509 (internal citations and quotations omitted); *see also J.D.B. v. North Carolina*, 564 U.S. 261, 262 (2011) ("[T]he test involves no consideration of the particular suspect's 'actual mindset'") (citation omitted). Courts must consider the totality of circumstances surrounding an interrogation to determine how an individual would have assessed his freedom of movement. *See id.* (quoting *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994) (per curiam)).

Relevant circumstances include the location and duration of questioning, statements made during questioning, the presence or absence of physical restraints and the release of the interviewee at the end of questioning. *See Howes*, 565 U.S. at 509. The Third Circuit also considers whether the interviewee voluntarily participated; whether other coercive tactics, like hostile tones of voice or display of weapons, were used; whether the questioner believed the interviewee to be guilty and, if so, whether this was revealed to the interviewee; whether the interviewee was told he was not under arrest; and whether the interviewee agreed to meet knowing that he would be questioned about a criminal offense. *See United States v. Ludwikowski*, 944 F.3d 123, 132 (3d Cir. 2019).

Even if passed, "the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010). Courts must also determine "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 509; *Ludwikowski*, 944 F.3d at 131 (same).

B

Involuntary statements made to law enforcement are inadmissible. *See Jacobs*, 431 F.3d at 108. Custody is not dispositive of whether statements were voluntary. *See Ludwikowski*, 944 F.3d at 135. A noncustodial confession can be involuntary in "special circumstances." *See id.* (citing *Beckwith v. United States*, 425 U.S. 341, 347–48 (1976)). The Government bears the burden of proving statements were "the product of an essentially free and unconstrained choice" by a preponderance of the evidence. *See Ludwikowski*, 944 F.3d at 135 (citation omitted).

7

Coercive police activity is "[a] necessary predicate to a finding of involuntariness." *Jacobs*, 431 F.3d at 108. Involuntariness also requires a "causal connection between the police conduct and the confession." *Id.*; *see also Halsey v. Pfeiffer*, 750 F.3d 273, 303 (3d Cir. 2014) ("[T]he circumstance that a suspect would not have confessed if he had not been interrogated does not mean that his confession was involuntary."). Law enforcement is permitted to use some psychological tactics to elicit a confession. *See Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir. 1986). Thus, "a confession is not rendered involuntary simply because the police procured it by using psychological tactics." *Halsey*, 750 F.3d at 304.

To assess coercion, courts must consider "the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, and the characteristics of the accused" to determine whether "the defendant's will was overborne when he confessed." *Id.* at 303–04 (internal quotations and citation omitted). The Third Circuit has considered police tactics such as "the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.* (citations omitted). It has also considered defendants' youth, lack of education or low intelligence and background and experience, including experience with the criminal justice system. *See Ludwikowski*, 944 F.3d at 135 (citations omitted).

### III

### A

Paine's interview was noncustodial so he was not entitled to *Miranda* warnings. The interview setting—Paine's front porch at 2:00 p.m.—was not an environment that

"presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 509; *see also United States v. Willaman*, 437 F.3d 354, 360 (3d Cir. 2006) (citing approvingly *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) ("When a person is questioned *on his own turf*, . . . the surroundings are not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.") (emphasis in original)). Plus the detectives spoke to Paine for just twenty minutes, never threatened, touched or restrained him in any way and Paine was free to walk back into his home as soon as the interview ended. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (half-hour interview noncustodial where defendant voluntarily went to police station and was free to leave after); *United States v. Morgan*, 562 F. App'x 123, 130 (3d Cir. 2014) (two-hour interview noncustodial in room with two unblocked exits where officers were not hostile and did not restrict interviewee's movement). Smith testified that he may have raised his voice slightly when Paine lied to the detectives and that their firearms were visible throughout the encounter, but neither fact comes close to outweighing the numerous circumstances that rendered this interaction objectively noncustodial. (Suppr. Hr'g Tr. 20:3–8.) In short, a reasonable person would not have felt unable to leave under these circumstances.

B

This case is not "the outlier [the Supreme Court] contemplated in *Beckwith*" when it recognized a confession could be involuntary in "special circumstances" absent a custodial interrogation. *See Ludwikowski*, 944 F.3d at 135. The Government has met its burden of proving Paine's statements were voluntary.

The interview took place in an unenclosed space, it was not prolonged or intensive, the detectives did not use any physical threats and Paine was free to go back inside immediately after the interview. *See id.* at 135–36 (questioning did not "bear the hallmarks of coercion" where officers' conduct was not physically threatening and door to room was not locked). After Smith called Paine on his lie, Paine admitted that he knew he had spoken to a purported 11-year-old girl and that he sent and requested explicit photographs. Paine presented no evidence that he did not understand the detectives' questions, was under the influence of drugs or alcohol, or was unable to understand the nature and consequences of the interview. Similarly, there is no evidence the detectives obtained Paine's confession using psychological coercion sufficient to overbear his will.[2]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2] Because Smith and Oliverio did not coerce Paine's statements or violate his *Miranda* rights, Paine's argument for suppressing physical evidence obtained pursuant to the search warrants fails.