**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 20-0055 |
| KYLE PAINE | |

**PAPPERT, J.**                                                                **August 19, 2021**

## MEMORANDUM

The Government charged Kyle Paine by indictment with: (1) using the Internet to entice a minor, and attempt to entice a minor, to engage in sexual conduct in violation of 18 U.S.C. § 2422(b); (2) transferring and attempting to transfer obscene material to a minor in violation of 18 U.S.C. § 1470; and (3) possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). The Government filed a Motion *in Limine* to introduce "prior acts" evidence against Paine at trial. Having considered the evidence and the parties' briefing, the Court grants the Motion.

I

A

The Court recently recited most of the relevant facts in this case—as the parties have presented them so far—in its Memorandum Opinion denying Paine's Motion to Suppress. (ECF 58.) Particularly relevant here are the facts regarding Paine's alleged 2015 communications and sexual contact with a 15-year-old girl from West Virginia. (Gov't Mot. *in Limine* 4–7, ECF 50.) The Government wishes to introduce evidence at trial showing the following.

In 2015, when Paine was 22-years-old, he formed an online relationship with a

1

15-year-old girl from West Virginia.  (*Id.* at 4.)  Around 6:00 a.m. on December 23, 2015, the girl's mother discovered that she was missing from their home.  (*Id.* at 5.)  Paine sent the mother a text message saying the girl was with him at his home in Langhorne, Pennsylvania, roughly 330 miles away.  (*Id.*)  The mother reported the girl missing and the West Virginia State Police contacted the Middletown Township Police Department to go to Paine's house and take the girl into protective custody.  (*Id.*)  When the officers arrived, Paine told them he and the girl were "just friends" and he had picked her up overnight because she and her parents were fighting.  (*Id.*)  The girl told officers that Paine "instructed her to 'take all of the blame for her running away.'"  (*Id.*)  She also said that she willingly left her home with Paine and his father—who drove Paine to West Virginia—but changed her mind during the trip and asked to go home.  (*Id.*)  Paine and his father refused to turn around.  (*Id.*)  The girl's parents told the West Virginia State Police they did not want to press criminal charges against Paine and the police closed the case without further investigation.  (*Id.*)

The FBI learned of this incident in 2019 and sent a Child Adolescent Forensic Interviewer to speak with the girl.  (*Id.* at 6.)  She said she met Paine online when she was 14-years-old and he was 21-years-old.  (*Id.*)  They communicated for about eight months before the December incident.  (*Id.*)  Paine reportedly asked the girl many times for pornographic images of herself, including images of her vagina.  (*Id.*)  Although the girl claimed she never sent the images, she admitted to watching adult pornography with Paine online.  (*Id.*)  She also said Paine sent her images and videos of himself "masturbating and with his penis exposed."  (*Id.*)  The girl remembers fighting with her parents in December of 2015 and Paine offering to pick her up and bring her to

Pennsylvania.  (*Id.*)  Paine told the girl he expected to "get something" for his efforts, which the girl understood to mean "that he wanted to 'have a baby together.'"  (*Id.*)

The girl remembered Paine and his father arriving at her home late at night. (*Id.*)  Paine's father drove and Paine sat with the girl in the back seat.  (*Id.* at 7.) During the trip, Paine whispered to the girl that he could not wait to get home and have sex with her.  (*Id.*)  Once they arrived in Pennsylvania, Paine took the girl to the bathroom "where he engaged in sexual contact with her."  (*Id.*)  They also had sex in Paine's bedroom.  (*Id.*)

The Government claims Skype and Facebook chats from 2015 corroborate this version of events.  In those communications, Paine discussed the girl with others, telling them that he intended to marry and have a baby with her.  (*Id.*)  He also discussed having sexual contact with the girl and shared non-graphic images of her. (*Id.*)

B

The Government contends evidence of Paine's conduct in 2015 "demonstrates that [he] had a longstanding sexual interest in children and that he was willing to travel to engage in 'hands on' sexual offenses against a minor victim, and is therefore probative of his intent, motive, identity, and absence of mistake in committing the charged offenses."  (*Id.* at 9.)  It also anticipates this evidence will help rebut potential defenses, such as fantasy.  (*Id.* at 7.)  Moreover, the Government argues this evidence presents little risk of unfair prejudice.  (*Id.* at 12–15.)

Paine counters that this evidence "do[es] not provide any inference that leads to the charges in the Indictment, nor serve[] any purpose other that [sic] to suggest that

[Paine] has a propensity to pursue underage girls." (Resp. to Mot. *in Limine* 4, ECF 51.) He also minimizes his involvement in the 2015 incident—noting that he was merely a passenger in the car used to pick up the girl—and attacks the credibility of the girl and overall veracity of the Government's version of events. (*Id.* at 3–5.) And he argues that the risk of unfair prejudice substantially outweighs the probative value of these past acts. (*Id.* at 5.)

## II

## A

Courts may admit prior bad acts as intrinsic or extrinsic evidence. *See United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). Evidence is intrinsic, and not subject to Federal Rule of Evidence 404(b), only if it directly proves the charged offense or if the "uncharged acts [are] performed contemporaneously with the charged crime [and] they facilitate that commission of the charged crime." *Id.* at 248–49.

Courts analyze extrinsic prior act evidence under Rule 404(b), which prohibits evidence of "a crime, wrong, or other act" used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The "permitted uses" of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to 404(b)(1)'s "prohibited uses," and "the party seeking to admit evidence under 404(b)(2) bears the burden of demonstrating its applicability." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014); *see also id.* ("Rule 404(b) is a rule of general exclusion, and carries with it no

presumption of admissibility.") (internal quotations and citation omitted).  "Rule 404(b) must be applied with careful precision, and . . . evidence of a defendant's prior bad acts is not to be admitted unless both the proponent and the District Court plainly identify a proper, non-propensity purpose for its admission."  *Id.* at 274 (citing *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)).

Prior bad act evidence must satisfy a four-part test—established in *Huddleston v. United States*, 485 U.S. 681 (1988)—to be admissible under Rule 404(b).  Specifically, the evidence must be:

> (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested.

*Caldwell*, 760 F.3d at 277–78 (citing *Davis*, 726 F.3d at 441).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  For evidence offered pursuant to Rule 404(b) to be relevant, it must fit into an inferential chain "no link of which is a forbidden propensity inference."  *United States v. Repak*, 852 F.3d 230, 243 (3d Cir. 2017) (internal quotations and citation omitted).  The Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### III

Evidence of Paine's 2015 conduct is not intrinsic evidence of the charged offense

as it cannot directly prove the crime or be fairly viewed as a contemporaneous action that facilitated it.  Evidence of these prior acts is nonetheless admissible as extrinsic evidence under Rule 404(b) because it satisfies the four-part *Huddleston* test.

A

The Government wishes to use evidence of the 2015 incident to show Paine's intent, motive, knowledge and identity in committing the charged offenses.  When evaluating whether a non-propensity purpose is at issue in a case, courts "consider the 'material issues and facts the government must prove to obtain a conviction.'" *Caldwell*, 760 F.3d at 276 (citing *United States v. Sampson*, 980 F.3d 883, 888 (3d Cir. 1992)); *see also United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014) ("[T]he government cannot offer Rule 404(b) evidence for a non-propensity purpose if doing so would not materially advance the prosecution's case.").

Here, the Government must prove, *inter alia*, that Paine "*knowingly attempted* to entice the activity underlying Count One, *knowingly* transferred the material underlying Count Two, and was in *knowing* possession of the images underlying Count Three."  (Gov't Mot. 12) (emphasis in original).  Paine's communications with the underage girl in 2015, his interstate travel to pick her up, his sexual contact with her and his distribution of, and requests for, pornographic images will assist the jury in determining whether Paine had the requisite intent and knowledge to commit the current charged offenses.  The Government must also prove that Paine, not someone else, was the person communicating with an undercover FBI agent posing as an 11-year-old girl.  His prior use of the Internet to communicate with a minor will help the Government meet this burden, as well.  And the Government anticipates that Paine

6

may offer a fantasy defense.  This evidence would undermine that defense.  The Government therefore avers proper non-propensity purposes for introducing evidence of the 2015 incident under Rule 404(b).

Second, the Government has demonstrated that this evidence fits clearly into a logical chain of inferences consistent with its theory of its case, "no link of which is a forbidden propensity inference."  *Repak*, 852 F.3d at 243.  Again, Paine's actions are relevant to showing his knowledge, intent and identity because they involve similar online communications and display his willingness to travel across state lines to entice a minor to have sex with him.

Third, allowing the jurors to learn about Paine's 2015 communications and contact with the underage girl would not create a risk of unfair prejudice that substantially outweighs the significant probative value.  Paine argues the jury will conclude based on this evidence that he has a "propensity to pursue underage girls" or "to have contact with females via social media that are either in fact underage or represented as such."[1]  (Resp. to Mot. 5.)  But those risks do not substantially outweigh the probative value.  The Government is right that evidence from the 2015 incident is "not overly graphic or offensive."  (Gov't Mot. 15.)  Plus, while Paine is accused in this case of crimes against someone he believed to be 11-years-old, the minor involved in the 2015 incident was 15-years-old, which lessens the prejudice of introducing the evidence.  The jury will be tasked with deciding whether Paine acted with intent and knowingly

---

[1]      Paine also challenges the girl's credibility, the Government's representation of the facts and the evidence's probative value.  Because the Court will allow the Government to introduce this evidence at trial—likely through the girl's testimony—Paine will have the opportunity to test the girl's credibility, challenge the Government's version of events and dispute the evidence's probative value before the jury.

committed the instant offenses.  That he previously followed through on an attempt to entice a minor to engage in sexual activity, sent pornographic images of himself to a minor and requested pornographic images from a minor are highly probative of his knowledge, intent and identity here.  *See United States v. Hilts*, 632 F. App'x 699, 706 (3d Cir. 2015) ("The probative value of other-acts evidence is heightened when the issue for which it is admitted 'involves the actor's state of mind.'") (quoting *Huddleston*, 485 U.S. at 685); *see also United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (evidence was "strongly probative because it counter[ed] two central arguments advanced by [the defendant]").  To the extent this evidence causes any unfair prejudice, the Court will address it with a limiting instruction if requested.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

8