IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| KYLE PAINE, | NO. 20-55 |
| *Defendant*. | |

**PAPPERT, J.**                                                                **January 5, 2022**

<u>**MEMORANDUM**</u>

A jury convicted Kyle Paine of attempted enticement of a minor, attempted transfer of obscene material to a minor, and possession of child pornography. (ECF 97.) Paine now moves for a judgment of acquittal or a new trial on all counts. (ECF 102.) The Court denies the motion.

I

On March 12, 2019, "toystorybro9239" contacted "katiedoll2000" on Kik, an internet messaging application, to ask whether she was interested in having "fun." (Trial Tr., Vol. I, at 55:21–24; 56:24–57:5, Gov't Exs. 2, 3, 4.) Katiedoll2000 quickly informed toystorybro9239—whose display name was "Kyle P"—she was eleven years old. (Gov't Exs. 3, 4.) Despite her age, Kyle P immediately engaged her in graphic sexual conversation. (Gov't Ex. 4.) Over the next several days, he told katiedoll2000 he wanted to have sex with her and her friend "Piper," wanted to have oral sex with them, and wanted to teach them to have oral sex with each other. (*Id.*) He sent katiedoll2000 a picture of his genitals. (*Id.*; Gov't Ex. 5.) He asked her to send him naked pictures of her and Piper in return. (Gov't Ex. 4.) Then he coordinated an in-person meeting so

1

the three of them could have sex. (*Id*.) When he missed their rendezvous, he apologized, promised to "make it up" to the girls, and tried to arrange a second meeting. (*Id*.) The exchange repeatedly referenced katiedoll2000's age. (*Id*.; Trial Tr., Vol. I, at 80:25–81:14.) Luckily, katiedoll2000 was not an eleven-year-old girl. "She" was FBI Special Agent Adam Sucheski. (Trial Tr., Vol. I, at 46:16–17, 54:11–17; 55:4–6; Gov't Exs. 1, 2.)

Kyle P, on the other hand, was Kyle Paine. Records from Kik and Verizon showed many of the messages were sent from the IP address associated with Paine's family home. (Gov't Exs. 6, 7; Trial Tr., Vol. I, at 99:9–13.) When Bensalem Police Detective Brian Oliverio and his partner spoke with Paine, he admitted he had a Kik conversation with someone he knew to be an eleven-year-old girl. (Trial Tr., Vol. I, at 205:23–206:20.) He was twenty-five. (*Id*. at 80:20–24.) Paine also acknowledged he sent her a picture of his genitals and asked for a similar photo in return. (*Id*. at 206:20–22.) In addition, Paine's room was filled with Toy Story memorabilia and the sheets in his bedroom matched those in the photo of his penis. (*Id*. at 111:10–112:6; Gov't Exs. 8-28, 8-30.)

Agents seized two cells phones during a search of the Paine residence, a Samsung S8 and Samsung S9. (Trial Tr., Vol. I, at 104:9–10.) Both were associated with Paine's phone number. (*Id*. at 126:24–127:1; 139:19–140:6; 224:1–10, Vol. II, 35:17–20; Gov Exs. 22A, 25.) The S8 was synced to two "kpaine" email addresses and the email address connected to the toystorybro9239 Kik account. (Trial Tr., Vol. I, at 127:13–18; Gov't Exs. 6, 12.) It also contained screenshots of an email conversation with Kik customer service about the suspension of the toystorybro9239 account and a

folder of images taken while using the Kik application, including selfies of Paine and the photograph of his penis. (Trial Tr., Vol I., at 127:19–130:12; Gov't Ex. 12.) The S9 included selfies of Paine, pictures of figurines he collected, a picture of a penis similar to the one he sent katiedoll2000, and photos of some of Paine's personal documents. (Trial Tr., Vol I., at 139:11–18; 140:18–141:10; Gov't Ex. 12.)

It also included images of child pornography. (Trial Tr., Vol. I, at 134:13–135:18; 137:18–139:5; 223:14–25; Gov't Exs. 12, 13, 14.) There were two distinct images, one of which appeared in five unique files on the device. (Trial Tr., Vol I, at 135:3–15.) The parties stipulated that if called, an examiner from the Regional Computer Forensic Laboratory would testify at least four of those files were undeleted and had file paths indicating they had been downloaded from the internet. (Trial Tr., Vol. I, at 223:18–25; Gov't Ex. 24.)

The Government also presented evidence that in 2015, Paine began an online relationship with R.H., a fourteen-year-old girl from West Virginia. (Trial Tr., Vol. I, 16:25–17:6, 19:20–20:2; 21:20–22:8.) During their first conversation, she told Paine she was fifteen. (*Id.* at 20:5–9.) Despite knowing she was a minor, Paine sent R.H. naked photographs and videos of himself. (*Id.* at 23:14–24:2; Gov't Ex. 22A.) He also asked her to take naked pictures of herself and send them to him. (Trial Tr., Vol. I, at 24:21–24.) Paine introduced R.H. to his parents over the phone, but told her to lie about her age. (*Id.* at 31:25–32:12.) Then, in December of that year, when R.H. was fifteen, Paine and his father travelled twelve hours round trip to take the girl from her parents' home in the middle of the night. (*Id.* at 18:6–15, 26:20–29:20, 148:25–150:12; Gov't Ex. 25)

After they arrived at Paine's home, he engaged in sexual conduct with her. (*Id.* at 30:9–10). Paine was twenty-two at the time. (Trial Tr., Vol. I, at 80:21–22; 242:2–9.)

II

A

Rule 29 of the Federal Rules of Criminal Procedure provides that a court, "on the defendant's motion[,] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence is insufficient if no "rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). This standard is "highly deferential." *Id.* It requires courts to view the entire record—not just isolated parts—"in the light most favorable to the prosecution." *Id.* (quoting *Brodie*, 403 F.3d at 133). Courts "must be ever vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence." *Id.* (ellipsis omitted) (quoting *Brodie*, 403 F.3d at 133). To avoid "act[ing] as a thirteenth juror," a court must uphold any verdict that "does not 'fall below the threshold of bare rationality.'" *Id.* at 431 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)); *see also United States v. Jacobs*, No. 20-1200, 2021 WL 5934672, at *4 (3d Cir. Dec. 16, 2021).

B

A more deferential standard of review applies to motions for a new trial under Rule 33. That rule permits district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Courts need "not view

4

the evidence favorably to the Government," *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). That said, Rule 33 motions are "disfavored and should be 'granted sparingly and only in exceptional cases.'" *Id.* (quoting *Gov't of Virgin Islands Y. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)). A court may "order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014) (quoting *Johnson*, 302 F.3d at 150). And a court may grant a new trial to cure an error at trial only if the error (or errors) "had a substantial influence on the outcome of the trial." *United States v. Greenspan*, 923 F.3d 138, 154 (3d Cir. 2019) (quoting *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993)).

### III

Paine contends the Government failed to prove any of the charges against him. He claims there was insufficient evidence (1) he intended to entice a minor or took a substantial step toward doing so, (2) he was the one who sent the picture of a penis to katiedoll2000, (3) he possessed the cell phone and knew it contained images of child pornography, and (4) the visual depiction was transported in interstate commerce or produced using materials that had been transported in interstate commerce. These arguments lack merit under either standard of review.

### A

To convict Paine of attempted enticement under 18 U.S.C. § 2422(b), the Government must show he intended to entice a minor to engage in sexual activity for

5

which someone could be charged with a crime and took a "substantial step" toward doing so. *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006).

There was abundant evidence of Paine's criminal intent. Paine suggests the chat messages themselves do not demonstrate criminal intent because he only discussed what he would like to do if the girls "were interested." (Def. Mot. at 4; Ex. 4.) He is wrong. Consent is not a defense to the crimes that underlie his § 2422(b) conviction. Under Pennsylvania law, a person is guilty of rape of a child or involuntary deviate sexual intercourse with a child under thirteen "without regard to the victim's consent." *C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336, 348 (Pa. 2008). And a person may be convicted of producing child pornography even if the minor consents to its creation. *See United States v. Laursen*, 847 F.3d 1026, 1033 (9th Cir. 2017). The chats show Paine's repeated efforts to engage two young girls in unlawful sexual activity.

In addition to the messages themselves, the jury learned of Paine's confession that he knew he was chatting with an eleven-year-old when he asked her to send him a naked picture of herself. That confession was independent evidence of his criminal intent. *United States v. Davis*, 985 F.3d 298 (3d Cir. 2021). Similarly, Paine's previous solicitation of nude photos from and sexual conduct with R.H. was circumstantial evidence he intended to entice a minor when he spoke with katiedoll2000. *See* (Mem. Op. at 8, ECF 60).

Paine also took a number of substantial steps toward violating § 2422(b). First, arranging a time and place to meet with a minor for the purpose of engaging in sexual conduct is a substantial step toward "'persuading, inducing, enticing or coercing' a minor to engage in sexual activity." *United States v. Nestor*, 574 F.3d 159, 161 (3d Cir.

2009); *Tykarsky*, 446 F.3d at 469. After discussing the kinds of sexual activities he wanted to engage in with people he believed to be eleven-year-old girls, Paine asked, "when would you two like to meet up and do this?" (Gov't Ex. 4.) He arranged to pick them up before school on Friday, March 15, 2019. (*Id.*; Trial Tr., Vol. I, at 87:10–12.) After he missed that meeting, he tried to arrange a second one for later that day or the coming weekend. (*Id.*) That Paine missed one planned meeting does not undo his efforts, before and after, to meet children for sex. *See United States v. Goetzke*, 494 F.3d 1231, 1236–37 (9th Cir. 2007) ("[T]ravel by a defendant to meet a potential victim is probative, but not required, to advance and verify an intent to persuade, induce, entice, or coerce.")

Moreover, not all of the crimes Paine attempted to entice katiedoll2000 to engage in require physical proximity. One could successfully entice a minor to self-produce child pornography without ever travelling. It follows that Paine took a substantial step toward enticing katiedoll2000 when he asked her to send him photographs of her and her friends' genitals. *See United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008).

B

Paine next challenges his conviction under 18 U.S.C. § 1470, arguing the Government did not establish the identity of the person who sent the image of a penis to the undercover agent. Like Paine's other arguments, it is a nonstarter.

The jury easily concluded it was Paine who sent the photo to katiedoll2000. The evidence established that Paine operated the Kik account from which the photo was sent. The cell phone on which it was taken was linked to Paine's phone number and email accounts. It contained a folder of images taken using the Kik app that included

selfies of Paine. The bedsheets in the background of the photograph matched those in his bedroom, and Paine had a picture of a similar looking penis on his other cell phone.

If that were not enough, Paine admitted to Detective Oliverio he had sent a photo of his exposed genitals to a person he thought was an eleven-old-girl. Paine tries to diminish the probative value of his statements by suggesting he may have been confessing to an unrelated violation of § 1470 involving a different eleven-year-old girl. (Def. Mot.at 4.) This theory is as unsupported as it is eyebrow raising. There was no evidence Paine was chatting with another child on Kik, much less that he sent her an image of his penis. It was reasonable to infer that Paine's confession concerned his well-documented exchange with katiedoll2000.

C

Paine also claims there was insufficient evidence he knowingly possessed the images of child pornography found on the Samsung S9. But the Government repeatedly demonstrated Paine operated the S9. Not only was it linked to his phone number, it contained pictures Paine took of himself, photos of his toy collection, and photographs of personal items like a doctor's note and a paystub. (Gov. Ex. 12.) Moreover, one of the images of child pornography appeared in at least four unique, undeleted files that had been downloaded from the internet. (Trial Tr., Vol. I at 223:18–25; Gov't Ex. 24). The jury reasonably concluded Paine knowingly possessed the images.

D

Finally, Paine contends the Government did not prove the images of child pornography were transported in interstate commerce. But Paine stipulated to

testimony that at least four of the images had been downloaded from the internet. (Gov't Ex. 24.) Proof the images were downloaded from the internet is sufficient to satisfy the jurisdictional element of 18 U.S.C. § 2252(a)(4). *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006); *Tykarsky*, 446 F.3d at 470 n.6.

## IV

Paine also renews two evidentiary objections. He contends the Court erred by admitting "prior acts" evidence about his relationship with R.H. and by excluding pornographic images he claimed were young-looking adults.

## A

Paine suggests that because he did not testify or present direct evidence regarding his intent or knowledge, the Government should not have been allowed to present evidence regarding his relationship with R.H. But in the same motion, he argues his enticement conviction cannot stand because the Government failed to prove his intent. (Def. Mot. at 3–4.) Clearly, Paine's intent was at issue, even if he did not present his own evidence on that point. Moreover, Paine disputed his knowledge and intent at trial, suggesting on cross-examination that Agent Sucheski did not sufficiently identify himself as a child and that his word choice made his claims about his age unbelievable. *See* (Trial Vol. I., 160:14–161:19; 165:24–169:4). Because Paine's knowledge and intent were at issue in the case, the Government could properly introduce relevant non-propensity evidence on those points. *See United States v. Repak*, 852 F.3d 230, 242 (3d Cir. 2017). To the extent Paine challenges other portions of the Court's earlier ruling regarding the Government's "prior acts" evidence, (Mem. Op., ECF 60), he may do so on appeal.

B

Paine's final argument is that he was constitutionally entitled to show the jury images of young-looking women that his investigator claimed were adults, even though he could offer no non-hearsay evidence of the women's ages.

At the end of the Government's case, the Defense explained it intended to call investigator Kim Rianni to testify that she found pornographic images of "young-looking" adult women on the internet. (Trial Tr., Vol. I, at 227:13–21.) Paine would then have introduced images of two such women from a "verified website." (*Id.* at 227:24–228:5.) He asserted that the images were not child pornography because they were obtained from "legitimate adult sites." (*Id.* at 254:7–10.) He wanted something "objective" which could appeal to the jury's "common sense" that there were pornographic images on the internet of adults who look like minors. (*Id.* at 258:21–24; 261:7–10.) He asked the Court to "accept" that Rianni and her associate "did the due diligence so these are in fact, images of adults." (*Id.* at 258:14–18.)

The Court expressed concern that the relevance of these images depended on the hearsay assertion that the individuals depicted were in fact adults. (*Id.* at 263:8–264:2.), and the Government moved to exclude the evidence on a number of grounds, including that it relied on inadmissible hearsay, (Gov't Mot. at 2, ECF 91); *see also* (Trial Tr., Vol. I, at 263:24, 264:3–5). Paine's counsel did not respond to these concerns or discuss how Ms. Rianni would prove the age of the women in the images, choosing instead to "absorb the Court's ruling." (Trial Tr., Vol. II, at 3:1.)

As the Court explained at the time, the pornographic images of young-looking women were inadmissible because their relevance depended on a fact Paine intended to

establish through inadmissible hearsay. (*Id.* at 4:2–4:25.) Paine sought to introduce the images to show that adult women may look like minors. But the images would only support that proposition if the women they depicted were in fact adults. Their relevance was contingent on some admissible proof of their age. *See* Fed. R. Evid. 901(a); 104(b). Paine did not offer any. Any statement from the website itself about the age of its models would have been inadmissible hearsay, *see* Fed. R. Evid. 801(c); 802, and Paine provided no alternative explanation for how Rianni or her colleagues knew or could have known that this website was "legitimate" or "verified," much less that every individual depicted was eighteen or older.

Without any way to establish the age of the models in the photos, the photos had no "tendency . . . to make [any] fact more or less probable." Fed. R. Evid. 401(a). It would only have confused the jury to ask them to compare the alleged child pornography to unrelated images of young-looking women based on nothing more than the unsubstantiated possibility that the women in the second set of images were adults. Because Paine's proposed evidence was irrelevant, it was inadmissible. Fed. R. Evid. 402.

In this motion, Paine does not challenge the correctness of the Court's evidentiary ruling. Instead, he contends he was constitutionally entitled to present images of young-looking people he claimed were adults despite their inadmissibility. (Def. Mot. at 6– 7). While criminal defendants must be given "a meaningful opportunity to present a complete defense," *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)), "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding

11

evidence from criminal trials," *United States v. Scheffer*, 523 U.S. 303, 308 (1998). These rules are valid unless they "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Holmes*, 547 U.S. at 324 (quoting *Scheffer*, 523 at 308) (alteration in original).

Paine was not denied a meaningful opportunity to present a complete defense. He did not need to introduce photos of young-looking women to argue the individuals in the images he was charged with possessing "could very well be adults." (Def. Mot. at 6.) He made that argument at trial, probing Agent Sucheski about the difficulty of determining the ages of the individuals depicted in those photographs. (Trial Tr., Vol. I, at 172:10–176:14.) And even if he had a reliable means of proving the age of the women in the comparison images he proposed to introduce, they would have had limited probative value. They would not show that the individuals depicted in the images he possessed were not minors, they would only illustrate the "common sense" idea that there are pornographic images of young-looking adult women on the internet. Paine's images were a far cry from the "clearly exculpatory evidence" defendants have a due process right to present. *Staruh v. Superintendent Cambridge Springs SCI*, 827 F.3d 251, 261 (3d Cir. 2016).

Federal Rule of Evidence 802's prohibition on hearsay evidence serves the legitimate purpose of keeping unreliable evidence from the trier of fact. *See Scheffer*, 523 U.S. at 309; *Staruh*, 827 F.3d at 260. The numerous exceptions to its prohibition mitigate the risk that reliable evidence will be arbitrarily excluded. *United States v. Mitrovic*, 890 F.3d 1217, 1222 (11th Cir. 2018). Indeed, Rule 807 "negates any contention that the Rules are arbitrary because it allows trustworthy hearsay evidence

that does not fall within any of the other exceptions." *Id*. Paine made no effort, then or now, to demonstrate that the website's assertions about the age of the women they depicted were admissible under Rule 807 or fell within any other exception. Nor does he point to any "persuasive assurances of trustworthiness" that would have justified admitting a pornographic website's out-of-court assertions in spite of the Federal Rules. *Staruh*, 827 F.3d at 261 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Even if his proposed evidence implicated his due process rights under *Chambers*, the exclusion of hearsay evidence regarding the age of the women in the images and of the images themselves was neither arbitrary nor disproportionate.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.