IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| KYLE PAINE | NO. 20-55 |

**Pappert, J.**                                                                                              **January 21, 2026**
**<u>MEMORANDUM</u>**

A jury convicted Kyle Paine of attempted enticement of a minor, attempted transfer of obscene material to a minor, and possession of child pornography. Paine now moves *pro se* to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, contending, among other things, that his trial counsel was ineffective. The Court denies the motion.

I

In March of 2019, FBI Agent Adam Sucheski began operating undercover as a purported nineteen-year-old female to investigate online child exploitation crimes. (App. at 92–94, 101, Gov't's Resp. Ex. A, Dkt. No. 163-1.)[1] Paine sent a message to the undercover FBI agent via a messaging application and said he wanted to have "fun," a euphemism for sexual contact. (*Id.* at 101–05; Suppl. App. at 43, Gov't's Resp. Ex. B, Dkt. No. 163-2.) The undercover agent told Paine she was actually an eleven-year-old girl, to which Paine responded that he was eighteen, though he was twenty-five at the time. (App. at 110; Suppl. App at 43.) Over the next three days, Paine engaged with

---

[1] The Government cites the appendix and supplemental appendix presented to the Third Circuit Court of Appeals, which are attached to their Response as Exhibits A and B. Page number citations are those assigned by ECF.

1

"Katie," the purported eleven-year-old girl, in a sexually explicit conversation and arranged to meet her and her classmate for sex in Bensalem, Pennsylvania. (App. at 110–14; Suppl. App. at 43–60.) Paine sent sexually explicit images of his genitals to "Katie" and requested similar photos in return. (Suppl. App. at 46–51.) He described the sex acts that he wanted to engage in with both the prepubescent girl and her classmate. Paine arranged to pick up both girls at a specific time and location, and, after he did not appear at the agreed time, apologized for missing the rendezvous and suggested an alternate meeting. (*Id.* at 55–60.)

Bensalem Township Detectives Gregory Smith—then serving on an FBI task force—and Brian Oliverio conducted a "knock and talk" interview at Paine's home in April of 2019. During the interview, Paine admitted to using a messaging app to communicate with an individual who told him she was eleven years old. He also admitted that he sent a photograph of his genitals and asked for one in return. (App. at 251–55.) Investigators obtained a federal search warrant for Paine's residence. (*Id.* at 228–29.) Agents seized two cell phones while executing the warrant. (*Id.* at 152.) Both phones contained evidence that they belonged to Paine, such as photographs, personal documents and email addresses. (*Id.* at 173–178, 188–89.) One of the cell phones, a Samsung S9, contained child pornography, including a collage of four different photographs. (Supp. App. at 69–72; App. at 185–86.) Two of the photographs in the collage depicted child pornography, one depicted adult pornography and one depicted a minor female's face. In addition to the photograph collage, one separate image depicted child pornography. (App. at 186.)

In January of 2020 a grand jury returned a three count indictment against Paine for (1) using the internet to entice a minor, and attempt to entice a minor, to engage in sexual conduct in violation of 18 U.S.C. § 2422(b), (2) transferring and attempting to transfer obscene material to a minor in violation of 18 U.S.C. § 1470 and (3) possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). (Indictment, Dkt. No. 1.)

At trial, the Government presented evidence of Paine's 2015 conduct with R.H., a minor girl from West Virginia. (App. at 194–95.) During their first conversation on a messaging application, R.H. told Paine she was fifteen years old. Paine told R.H. he was twenty. (*Id*. at 68.) Paine formed a sexual online relationship with her and later travelled from Pennsylvania to West Virginia to bring her back to his home, where they engaged in sex. (Mem. Op. Granting Gov't's Mot. at 2–3, Dkt. No. 60.) R.H.'s parents told West Virginia State Police they did not want to press charges against Paine and the matter was closed without further investigation. (*Id*.)

II

Paine moved to suppress the statements he made during the April 2019 interview. (Dkt. No. 39.) The Court denied the motion after holding an evidentiary hearing and determining the interview was non-custodial and Paine's statements were voluntary. (Dkt. No. 58 at 8–10.) The government filed a motion *in limine* under Federal Rule of Evidence 404(b), seeking to admit in its case-in-chief evidence of Paine's 2015 relationship with R.H. (Dkt. No. 50.) The Court granted the motion, finding such evidence admissible for non-propensity purposes and deciding the risk of unfair prejudice to Paine did not outweigh the evidence's significant probative value. (Dkt.

No. 60 at 6–8.) At trial, the Court instructed the jury to consider this evidence only for the limited purpose of determining Paine's intent, motive, knowledge and identity, and not to consider the evidence as proof of his bad character or propensity to commit crimes. (App. at 125–26.)

The jury found Paine guilty of all charges. (Dkt. No. 97.) Paine then moved pursuant to Federal Rules of Criminal Procedure 29 and 33 seeking a judgment of acquittal or a new trial based on the alleged insufficiency of the trial evidence, (Dkt. No. 102), which the Court denied, (Dkt. Nos. 114 & 115). The Court sentenced Paine to 330 months' imprisonment and a lifetime period of supervised release. (Dkt. No. 147.) He appealed, raising the same arguments he made in his motion for acquittal and one new argument: that the Indictment was constructively amended when the Government introduced Rule 404(b) evidence of Paine's interactions with R.H. in 2015. *United States v. Paine*, No. 22-3358, 2023 WL 7410424 (3d Cir. Nov. 9, 2023), (Dkt. No. 153). The Third Circuit Court of Appeals affirmed the judgment. *Id.*

Paine now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that his counsel was constitutionally ineffective. He also attempts to relitigate claims that:

> (1) the Court's admission of 404(b) evidence was improper and resulted in a constructive amendment to his Indictment,
> (2) the Government presented insufficient evidence to support his conviction, and
> (3) the Court should have suppressed statements he made during the "knock and talk" interview at his home in April of 2019.

(Def.'s Mot. at 4–8, Dkt. No. 4.)

4

III

A

Section 2255 permits a prisoner sentenced by a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" where (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the Court finds the sentence was imposed without jurisdiction, was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, it may, as appropriate, vacate the judgment, resentence the prisoner or grant the prisoner a new trial. *Id.* § 2255(b).

The Court need not hold an evidentiary hearing if the motion, case filings and record "conclusively show that the prisoner is entitled to no relief." *Id.* A hearing is not necessary where, as here, a petitioner's allegations are "clearly resolved by the record." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005).

B

The two-part test set forth in *Strickland v. Washington* governs ineffective assistance of counsel claims. 466 U.S. 668 (1984). To prevail on such a claim, the petitioner must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness," and (2) he "suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466

5

U.S. at 687). If the petitioner fails to satisfy one prong, the Court need not address the other. *Strickland*, 466 U.S. at 697.

Under *Strickland*'s first prong, the proper measure of counsel's performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Counsel performs deficiently by making errors "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 462 (3d Cir. 2023) (quoting *Strickland*, 466 U.S. at 687). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. There is a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("[O]nly the rare claim of ineffectiveness of counsel . . . should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.").

Under *Strickland*'s second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

IV

A

Paine first claims his lawyer did not object to the indictment, presumably pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). (Def.'s Mot. at 4, Dkt. No. 4.) Rule 7(c)(1) states:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7. An indictment is facially sufficient under Rule 7(c)(1) if it:

> (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). "A recitation of the statutory language" usually satisfies the first element if it includes "sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013). And a "specification of the time period of the alleged offense" typically satisfies the second and third elements. *Id.* A court should uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007), *as amended* (Aug. 10, 2007).

Each count of Paine's Indictment includes the elements of the associated

statutory offense and the specific dates each alleged offense occurred. (Indictment at 1–4.) Counts One and Two specify that Paine used the internet to commit the charged offenses and Count Three specifies the device from which child pornography was recovered. (*Id.*) The Indictment is sufficient and any pre-trial challenge to it would have been meritless. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).[2]

B

Next, Paine contends his counsel failed to raise an affirmative defense under 18 U.S.C. § 2252(c), which states:

> (c) Affirmative Defense.—It shall be an affirmative defense to a charge of violating paragraph (4) of subsection (a) that the defendant—
>
> > (1) *possessed less than three matters containing any visual depiction* proscribed by that paragraph; and

---

[2] Paine also complains that counsel failed to "raise objections to . . . the legitimacy of evidence presented to the grand jury." (Def.'s Mot. at 4.) Such "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). And, in any event, the guilty verdict against Paine cured any such evidentiary issues. *See United States v. Console*, 13 F.3d 641, 672 (3d Cir 1993) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause . . . but also that [defendants] are in fact guilty as charged beyond a reasonable doubt.").

> (2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof—
>
>> (A) *took reasonable steps to destroy* each such visual depiction; or
>>
>> (B) *reported the matter to a law enforcement agency* and afforded that agency access to each such visual depiction.

(emphasis added). But Paine took no "reasonable steps to destroy" the child pornography in his possession and did not "report[] the matter to a law enforcement agency."

Paine does not and cannot argue that he reported the child pornography to law enforcement. He argues that he "deleted" the images from their "original locations," and unbeknownst to him they were "automatically saved to the phone" during "backups." (Pet'r's Sur-reply at 5, Dkt. No. 168.) But at trial Paine stipulated that if called, an examiner from the Regional Computer Forensic Laboratory would have testified that the photograph collage appeared in at least four unique files, downloaded from the internet and stored on the Samsung S9 cell phone, none of which had been deleted. (Trial Tr. at 223:14–24, Dkt. No. 104.) The stipulation directly contradicts his "self-serving assertion" that he tried to delete the offensive images. *United States v. Galletta*, No. 14-603, 2023 WL 4565477, at *41 n.61, (E.D. Pa. July 17, 2023), *aff'd*, No. 23-2403, 2025 WL 1894945 (3d Cir. July 9, 2025).

Where a petitioner alleges counsel failed to advise him of a potential affirmative defense, "the resolution of the [*Strickland*] 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This affirmative defense would have been meritless because the

9

evidence showed Paine never attempted to delete the photographs on his phone and Paine was not prejudiced by his counsel's decision not to raise it.[3]

C

Paine also claims his lawyer was ineffective during plea negotiations. (Def.'s Mot. at 4.) As an initial matter, the Government was not obligated to offer Paine a plea agreement. *Missouri v. Frye*, 566 U.S. 134, 148 (2012) ("[A] defendant has no right to be offered a plea."). Yet his counsel successfully negotiated one, reaching agreement on a jointly recommended sentence of 156 months' imprisonment. (Unsigned Guilty Plea Agreement at 3, Gov't's Resp. Ex. C, Dkt. No. 163-3.) Paine rejected it. As counsel emailed the Government:

> In accordance with Missouri v. Frye, I spoke with Mr. Paine today at the FDC. He has a copy of the guilty plea agreement and waiver of rights, as well as the government's informal estimated sentencing guideline calculations, which I found to be accurate. I discussed the terms with Mr. Paine, and the advisory guidelines and mandatory minimum applicable in his case. I provided him with my recommendation as to whether he should

---

[3] The Court need not decide whether Paine "possessed less than three matters containing" a depiction of child pornography. 18 U.S.C. 2252(c)(1). Paine possessed three distinct images of child pornography: one individual photograph and one photograph collage which included two separate depictions of child pornography. Courts have not reached a consensus on the question of whether *distinct images* equate to "*matters containing* any visual depiction." *Contrast United States v. Perez*, 5 F. 4th 390, 400 n.4 (3d Cir. 2021) (explaining in *dicta* that "[18 U.S.C. §2252(c) provides] an affirmative defense to a child pornography possession charge where the defendant possesses *less than three images* and promptly destroyed the images or reported the matter to law enforcement") (emphasis added), *with Galletta*, 2023 WL 4565477, at *33–41 (collecting cases and deciding "the law on the applicability of [§ 2252(c)] is uncertain" with respect to the term "matters"). In any event, even if Paine possessed only two "matters containing a depiction of child pornography"—one photograph collage and one individual photograph—the affirmative defense would have failed for the reasons explained.

accept the plea offer. Mr. Paine elected to decline the plea offer and proceed to trial.

(June 2019 Emails at 2, Gov't's Resp. Ex. D, Dkt. No. 163-4.) [4]

Paine concedes his counsel "negotiated a plea agreement with some benefit," but argues he rejected it because he believed a better offer of 120 months' incarceration was "forthcoming." (Pet'r's Sur-reply at 15.) He contends he "repeatedly told his lawyer that he wanted to take the ten year [sic] deal that was offered, the one promised to him and his parents." (*Id.* at 16.) And he alleges his lawyer "failed to admit that the [ten-year deal] was not forthcoming and that the one for 156 months was the best offer coming." (*Id.*) The gravamen of his argument is that

> [h]ad counsel told me that he was wrong, and that the 156 month [sic] offer was the best that was forthcoming; [sic] and if he had stressed that I faced such a high guideline as I did going to trial without acceptance, I would have accepted the offer for 156 months.

(Aff. of Kyle Paine ¶ 16.) Paine offers to support his allegations with "additional testimony from his parents." (Pet'r's Sur-reply at 16.)

Paine's arguments are contradicted by the record. The Government later offered to withdraw Count Three and recommend to the Court, again under Rule 11(c)(1)(B), a sentence of ten years' incarceration. (Tr. of Final Pretrial Conf. at 24:5–10, Dkt. No. 88.) Paine rejected that offer as well. (*Id.* at 25:25–26:2.) In a colloquy during the final pretrial conference, Paine confirmed under oath that he had discussed this offer with counsel, and understood the recommendation, sentencing guidelines, and risk of a

---

[4] When Paine considered this plea agreement, he understood his offenses to carry a mandatory minimum of 120 months' incarceration and a guideline range of 210–262 months' incarceration. (June 2019 Emails at 3.) The Court ultimately sentenced Paine under a guideline range of 292–365 months' incarceration, (Tr. of Sent. Hr'g at 31:15–20), and imposed its 330-month sentence, (*Id.* at 63:4–7).

11

guilty verdict. (*Id.* at 24:5–25:19.) The Court confirmed Paine's judgment was sound during his conversations with counsel and that counsel had answered his questions. (*Id.* at 26:7–27:6.) The Government explained its willingness to dismiss the child pornography possession charge against Paine as part of its plea offer. (*Id.* at 27:14–24.) Paine *again* confirmed his desire to proceed to trial:

> Counsel: So, Mr. Paine, as you just heard, the Government has indicated that officially they would withdraw Count Three.
> Paine: Okay.
> Counsel: Which is the child pornography count. [T]he recommended plea would be to Counts One and Two, and would be a recommended B plea of ten years. Knowing that information is certain, would you want to change your plea and pursue a trial or do you want to enter into a plea?
> Paine: I would like to proceed with trial.

(*Id.* at 28:2–11) (cleaned up).

Paine does not allege that counsel advised him *against* accepting the deal offered him, nor does he contend counsel failed to tell him of a better offer. Paine suggests instead that counsel "should have strenuously recommended acceptance of [the 156-month] agreement" because the 120-month deal "was not [forthcoming]." (Pet'r's Sur-reply at 15.) His allegation is meritless and contradicted by his rejection of not only that offer, but the more favorable one to dismiss Count Three and recommend a 120-month sentence. *See United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (explaining that courts need not accept allegations that are "clearly frivolous on the basis of the existing record.").

D

Paine next claims his counsel "silenc[ed], ignore[d], and refus[ed] to permit" him to testify on his own behalf "with regard[] to [his] claim, own intention, beliefs and objections to facts alleged by the Government." (Def.'s Mot. at 4.) He has since

12

retracted that assertion, (Pet'r's Sur-reply at 18), a wise decision given the following exchange at trial:

> Counsel: [Y]ou and I have met and I have prepared you to testify today. Is that correct?
> Paine: Yes.
> Counsel: And in terms of the discussions we've had about testimony, is it fair to say that you've decided that you would make a decision based on the trial evidence as well as the government's case presented at trial?
> Paine: That is correct.
> Counsel: You understand you have a right to testify?
> Paine: Yes.
> Counsel: And you understand that that constitutional right cannot be taken away by anyone, including the Court?
> Paine: I understand that.
> Counsel: You understand that I, as your attorney, I told you I would make a recommendation to you at trial given the circumstances of this case?
> Paine: Correct.
> Counsel: I have recommended to you that you do not testify in this case based on the way the case is coming, you understand that?
> Paine: I do understand.
> Counsel: Even with my recommendation, you've been prepared to testify, it's entirely one hundred percent your decision as to whether or not to testify. Do you understand that?
> Paine: I do understand.
> Counsel: Do you want to testify in this case?
> Paine: No, I will take your advice.

(Supp. App. at 115:18–116:19) (cleaned up).

### E

Next, Paine contends his counsel "failed to obtain expert witnesses that could have helped at trial." (Def.'s Mot. at 4.) Counsel's decision whether to call a witness is afforded "a heavy measure of deference." *Strickland*, 466 U.S. at 690–91. The decision "is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993); *see also Gay v. Wilson*, No. 07-1119, 2007 WL 2823659, at *13 (E.D. Pa. Sept. 24, 2007)

("Numerous strategical reasons may justify defense counsel's decision not to call an expert witness, including . . . the fact that the defense witness may be unhelpful.").

Paine throws against the wall a list of various unnamed experts he believes could have helped his case, such as a psychiatrist, a forensic computer examiner, a defense medical expert and a forensic data examiner. (Pet'r's Sur-reply at 13–14.) He self-servingly contends such witnesses, if called, would have testified favorably for him. He doesn't address the risk of damaging cross-examination and fails to demonstrate that counsel acted unreasonably in deciding not to call an expert witness, or that this decision prejudiced him. *See Galletta*, 2023 WL 4565477 at \*23–25 ("At a minimum, [defendant] has failed to demonstrate that [the expert] would have testified favorably to him, that [counsel] acted unreasonably in declining to call [the expert]" or that he suffered prejudice). Counsel's decision not to present an expert witness is "precisely the sort of strategic decision that *Strickland* protects from second-guessing." *Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005).

### F

Paine argues counsel was ineffective for not raising a "fantasy defense," *i.e.*, that Paine never intended to engage in criminal acts. (Pet'r's Sur-reply at 9.) He claims the Government "agreed not to bring in the 404(b) evidence" related to Paine's 2015 interactions with R.H. unless "the defense raised a fantasy defense or somehow made it relevant." (Aff. of Kyle Paine ¶ 13.) He argues "the government blindsided" his lawyer by introducing Rule 404(b) evidence, (Pet'r's Sur-reply at 4), and that counsel was so surprised that, at trial, he was unprepared to muster a fantasy defense. (*Id.* at 23.)

14

Again, the record contradicts Paine's allegations. The Government filed their 404(b) motion on July 26, 2021—more than two months before trial began on September 29. *See* (Dkt. Nos. 50 & 104). And the Court granted the motion almost six weeks before trial. *See* (Dkt. No. 60). Neither Paine nor his lawyer could have been "blindsided" as Paine contends. They both knew Paine's previous interactions with R.H. were part of the Government's case-in-chief and would be admitted to show his "intent, motive, knowledge and identity in committing the charged offenses." (*Id.*)

Paine's allegations are "unsupported by specifics" and are "wholly incredible." *Patton v. United States*, No. 2-93, 2010 WL 3191887, at *1 (W.D. Pa. Aug. 11, 2010), *aff'd*, 502 F. App'x 139 (3d Cir. 2012). "[C]learly frivolous on the basis of the existing record," the Court need not accept them as true. *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). Paine does not overcome the "strong presumption" that counsel was reasonable in his decision not to argue a fantasy defense. *Strickland*, 466 U.S. at 689.

V

Paine's remaining claims fail because the Third Circuit Court of Appeals rejected them or they are procedurally defaulted.

A

First, Paine objects to the admission at trial of the 404(b) evidence regarding his relationship with R.H., and claims the evidence constructively amended the Indictment. (Def.'s Mot. at 5–6.) Paine raised these arguments on direct appeal. *United States v. Paine*, No. 22-3358, 2023 WL 7410424 (3d Cir. Nov. 9, 2023). The Third Circuit panel affirmed the Court's ruling, finding "the evidence of [Paine's] previous interactions with R.H. had no effect on [his] convictions." *Id.* at *5. The appellate court also decided

15

"Paine's assertion that the Indictment was constructively amended" failed because the "District Court provided a clear limiting instruction to the jury on how it could consider the evidence." *Id.* (citing *United States v. Fattah*, 858 F.3d 801, 818 (3d Cir. 2017), *as amended* (June 12, 2017).

Paine also claims the evidence was insufficient to support his conviction for Counts One and Two of his Indictment, but he raised this argument on appeal as well. (Def.'s Mot. at 7.) The Circuit concluded "the jury was presented with overwhelming evidence" from which it "could infer that Paine . . . attempted to entice an eleven-year-old child to engage in sexual activity," "sent a picture of his genitalia in an attempt to transfer it to an eleven-year-old child," and "possess[ed] child pornography." *Paine*, 2023 WL 7410424, at *3.

Paine may not relitigate these issues in his § 2255 motion. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal.").

B

Finally, Paine takes another shot at the Court's ruling on his motion to suppress statements made during the April 3, 2019 "knock and talk" interview. The Court denied the motion after holding an evidentiary hearing and determining the interview was non-custodial and Paine's statements to the officers were voluntary. (Dkt. No. 58 at 8–10.) He now argues, for the first time, that those officers "lacked jurisdiction," (Def.'s Mot. at 8), because Detectives Smith and Oliviero were members of the

16

Bensalem Township Police Department and the interview took place in Langhorne, Pennsylvania.

Claims that a defendant could have, but did not, advance on direct appeal are generally precluded from a § 2255 motion. *DeRewal*, 10 F.3d at 105 n.4. Such claims may only be raised if "cause" excuses the procedural default and "actual prejudice" results. *United States v. Frady*, 456 U.S. 152, 167 (1982). To show "cause," Paine must identify "some objective factor external to the defense" which prevented him from raising the argument on appeal. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). "Actual prejudice" requires a showing "that [the error] worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170 (emphasis in original).

Constitutionally ineffective assistance of counsel may establish "cause" for procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("Examples of external impediments which have been found to constitute cause in the procedural default context include . . . ineffective assistance of counsel."). Paine contends his lawyer was ineffective in two ways with respect to the motion to suppress, but neither establishes "cause" for his procedural default.

1

First, he argues counsel was ineffective for "failing to raise the suppression issue on appeal." (Pet'r's Sur-reply at 17.) He claims he asked counsel "to appeal the suppression issue, and he did not do so, choosing to pursue a weaker claim of insufficiency of the evidence instead." (Aff. of Kyle Paine ¶ 19, Dkt. No. 168 at 31.) But counsel, not Paine, ultimately decides "which issues to pursue on appeal," and need

not "raise every possible claim." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Indeed, such decisions are the "hallmark of effective appellate advocacy" because fighting losing battles on appeal "runs the risk of burying good arguments" beneath bad ones. *Id.* (quotations omitted). Paine concedes as much: "[C]ounsel is not required to raise all potential issues, and may winnow out weaker arguments in favor of stronger ones." (Pet'r's Sur-reply at 17.) But, he argues, "there is no indication that such a tactical decision was made here." (*Id.*)

Paine is plainly wrong. As already discussed, his counsel filed a direct appeal and chose to prioritize certain specific arguments. "[I]t is not inappropriate for counsel, after consultation with the client, to override the wishes of the client when exercising professional judgment" about which arguments to raise on appeal. *Sistrunk*, 96 F.3d at 670; *see also Murray v. Carrier*, 477 U.S. 478, 486 (1986) ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."). Paine fails to establish "cause" for his procedural default, and his argument that counsel should have included in his appeal the Court's decision on the suppression motion is barred.

2

Second, Paine claims counsel was ineffective for failing to argue at trial or on appeal that the Bensalem Township officers lacked jurisdiction to interview him. This argument is similarly meritless. Agent Sucheski, the FBI Agent whom Paine contacted through the messaging app, referred his investigation to Detective Smith, a federal "task force officer in Bensalem." (App. at 149:21–25.) Smith was a deputized "Task Force Officer for the FBI" supporting the "FBI Child Exploitation Task Force,

Philadelphia Field Office."  (Aff. in Supp. of Search Warrant ¶ 2, Gov't's Opp'n to Mot. to Supp. Ex. A, Dkt. No. 41-1.)  Paine has never disputed that Smith was authorized to investigate federal criminal violations as a federal "investigative or law enforcement officer" under 18 U.S.C. § 2510(7) and concedes Smith had jurisdiction to conduct the interview.  (Pet'r's Sur-reply at 17.)  Nonetheless Paine argues his statements should be suppressed because of Detective Oliviero's mere presence at the interview.  (*Id.*) ("It was not bring a friend to work day, or [Task Force Officer] ride-along day.").

In Pennsylvania, officers deputized to participate in a federal task force—like Detective Smith—are permitted to investigate potential crimes outside their municipal jurisdiction under the Municipal Police Jurisdiction Act.  42 Pa. Cons. Stat. § 8953(a)(3)(iii).  And a municipal officer—like Detective Oliviero—is authorized to act "beyond the territorial limits of his primary jurisdiction," when "requested to aid or assist a Federal" officer.  *Id.* § 8953(a), (a)(3)(i).  Smith invited Oliviero to attend the April 2019 interview for "safety reasons," and Smith took the lead questioning Paine.  (Trial Tr. at 207:13–14, 19–20.)  Even if Detective Oliviero's participation were improper under state law, Paine's statements during the interview would not necessarily be suppressed.  *United States v. Smith*, No. 23-54, 2025 WL 3687329, at *23 (W.D. Pa. Dec. 19, 2025) (collecting cases) ("[A] violation of a state law such as the MPJA does not require suppression of evidence in federal criminal proceedings.").

The interview was part of a valid investigation of possible violations of federal child exploitation laws.  A challenge to it would have been meritless, and Paine's counsel was not ineffective for failing to raise one.  *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of

19

effective counsel based on an attorney's failure to raise a meritless argument."). Paine has not established "cause" for his failure to raise this issue at trial or on appeal, and his claim is procedurally barred.

## VI

A § 2255 petitioner can only appeal the denial of his claims if he obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A district court cannot issue one unless the petitioner makes a substantial showing that his constitutional rights were denied. *Id.* § 2253(c)(2). To do so, he must demonstrate that reasonable jurists would find the Court's assessment of his claims wrong or debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling and Paine has not made a substantial showing that his constitutional rights were violated.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.